IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | NO. 6:17CR7 | |
| | § | JUDGE RC/JDL | |
| DOUGLAS M. PICK | § | | |

## FACTUAL BASIS

Investigation by the United States Department of Health and Human Services – Office of the Inspector General (HHS-OIG), the United States Department of Labor (DOL), and the Texas Attorney General's Medicaid Fraud Control Unit (OAG-MFCU) disclosed the following facts establishing that I, the defendant, **Douglas M. Pick**, violated 18 U.S.C. § 1954 (Offer, Acceptance, or Solicitation to Influence Operations of Employee Benefit Plan). I accept the following factual basis as true and correct:

1. Pharmaceutical Technologies, Inc. (PTI), is located in Omaha, Nebraska. PTI operated as a pharmacy benefits manager (PBM) providing for the administration and delivery of pharmacy products and services through a network of pharmacies to various "employee welfare benefit plans" as defined by Title I of the Employee Retirement Income Security Act of 1974 (ERISA) and/or to various "health care benefit programs" as defined by 18 U.S.C. § 24, either directly or indirectly through contracted entities, including third-party administrators (TPAs) and private label PBMs.

2. At times, PTI was a direct service provider to ERISA-covered employee welfare benefit plans and was, on those occasions, a party in interest as defined by ERISA.

**Factual Basis - Page 1**

3. I was the President and Chief Executive Officer (CEO) of PTI from 1992 to April 2013.

4. National Pharmaceutical Services (NPS), a division of PTI, was also located in Omaha, Nebraska.

5. PTI developed a pharmacy benefit management system under which NPS provided for the administration and delivery of pharmacy products and services through a network of pharmacies. PTI contracted with "Producers," individuals who had business relationships with health and welfare benefit plans that could utilize the NPS system in connection with the delivery of pharmacy products and services to members of their respective health and welfare benefit plans. These groups were known as "Target Groups."

6. PTI and its Producers entered into contractual relationships whereby the Producer identified Target Groups to PTI and assisted PTI in establishing contractual agreements through which PTI would provide administrative services for the pharmacy products and services component of the Target Groups' health and welfare benefit plans.

7. During my tenure, I was the primary individual responsible for negotiations with Producers.

8. PTI executed a Pharmacy Benefits Administration Agreement with each Target Group identified by the Producer (which became known as a "Contracted Group") during the term of the Producer Agreement. PTI would compensate Producers at contracted rates. The payment amounts were based upon PTI's receipt of payments for

PTI administration services payable by the Contracted Groups under Pharmacy Benefits Administration Agreements.

9. At times, as set forth below, certain PTI Producer Agreements were used to facilitate the payment of commissions to certain Producers. Some Producers unlawfully used their positions to steer business to PTI in exchange for payments from PTI. At times, PTI Producer Agreements and subsequent payments made in accordance with those Agreements violated ERISA.

10. Thomas W. Slack, Jr. (Slack), who resided in Tyler, Texas, served as the CEO of Healthfirst and all of its subsidiaries, including Healthfirst RX Solutions (HFRX). Slack was CEO of Healthfirst from on or before January 1998 until July 27, 2011. Healthfirst, located in Tyler, Texas, provided various administrative services to employee benefit plans (client plans), which provided health care benefits, including pharmacy products. East Texas Medical Center Regional Healthcare System (ETMCRHS or ETMC) was Healthfirst's parent company. Healthfirst was a service provider to ERISA-covered employee welfare benefit plans and was therefore a party in interest as defined by ERISA. HFRX, a private label PBM located in Tyler, Texas, provided pharmacy benefit services to client plans.

11. Effective January 1, 2004, Slack executed a non-exclusive contract (NPS Agreement) on behalf of Healthfirst for PTI to administer Healthfirst's client plans' pharmacy benefits through HFRX. The NPS Agreement had an initial term of one year and then automatically renewed for successive one-year terms unless either side terminated the contract prior to its renewal. I executed the contract as President and CEO

of PTI. The NPS Agreement specified that Healthfirst was to pay PTI an administrative fee of $2.15 per claim on prescriptions filled under the NPS Agreement (PTI Administrative Fee). Healthfirst contracted directly with its customers (customer contracts). PTI did not have a direct contractual relationship with any of the Healthfirst client plans.

12. During April and May of 2004, Slack began having telephone discussions with me, as CEO of PTI, regarding Slack's desire to receive money through Sharper Aviation Solutions, Inc. (Sharper), a company owned and controlled by Slack, on Healthfirst's client plans' pharmacy business in exchange for Slack's commitment to: (i) to use PTI as a pharmacy benefit service provider to Healthfirst plans, and (ii) to direct additional pharmacy benefit business to PTI. As CEO of, and on behalf of PTI, I agreed that PTI would pay Slack through Sharper in exchange for this commitment, namely I agreed to pay a commission per prescription filled to Sharper for all Healthfirst clients. To accomplish this, Slack, on behalf of Healthfirst, approved an increase of the PTI Administrative Fee to $2.90 per prescription, which was a $0.75 increase in cost imposed on Healthfirst for each prescription filled. PTI would then pay the increase of $0.75 per prescription filled as a commission to Sharper. PTI paid Sharper the $0.75 per prescription commission on the entire Healthfirst book of business.

13. On or about June 30, 2011, I approved a payment from PTI to Sharper of approximately $22,611.75 which was sent to a location within the Eastern District of Texas.

14. Slack occupied a status described in Section 1954(4) in relation to an employee benefit plan. Namely, he was an officer and employee of Healthfirst in a position to influence the decisions and operations of Healthfirst, a service provider to ERISA-covered employee welfare benefit plans.

15. I gave such payment because of and with the intent to influence Slack's actions, decisions, and other duties relating to questions and matters concerning the employee welfare benefit plans administered by Healthfirst. More specifically, the money was paid to Sharper in exchange for Slack's commitment (i) to use PTI as a pharmacy benefit service provider to Healthfirst plans, and (ii) to direct additional pharmacy benefit business to PTI.

16. I understand that the employee benefit plans administered by Healthfirst were employee welfare benefit plans subject to Title I of ERISA.

17. Between approximately June 2004 and late 2012, Slack and Sharper Aviation received approximately $1,627,462.81 in illegal commissions from PTI.

18. Between 2001 and 2013, on behalf of PTI, I entered into at least three other similar PTI Producer Agreements whereby certain Producers unlawfully used their positions to steer business to PTI in exchange for payments from PTI. These three Producers collectively received approximately $1,953,973.05 in illegal commissions. The commission payments were made because of and with the intent to influence the Producers' actions, decisions, and other duties relating to questions and matters concerning health and welfare benefit plans.

19. I acknowledge that these acts constitute a violation of 18 U.S.C. § 1954 (Offer, Acceptance, or Solicitation to Influence Operations of Employee Benefit Plan).

I hereby stipulate that the facts described above are true and correct and accept them as the uncontroverted facts of this case.

Dated: 2-13-2017

_____
Defendant

**Defendant's Counsel's Signature and Acknowledgment:**

I have read this Factual Basis and the Plea Agreement in this matter and have reviewed them with my client, **Douglas M. Pick**. Based upon my discussions with my client, I am satisfied that he understands the terms and effects of the Factual Basis and the Plea Agreement and that he is signing this Factual Basis voluntarily.

Dated: 13 Feb 2017

_____
Daniel K. Hagood
Attorney for Defendant